IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1613-WJM-STV

OWNERS INSURANCE COMPANY, an Ohio Corporation,

    Plaintiff,

v.

ALAN KASLOFF and
PEGGY KASLOFF,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS IN PART AND ADMINISTRATIVELY CLOSING THIS ACTION

Plaintiff Owners Insurance Company ("Owners") brings this declaratory judgment action against Alan and Peggy Kasloff (together, the "Kasloffs"), who are separately represented. Currently before the Court is Alan Kasloff's Rule 12(b)(1) Motion to Dismiss Complaint for Declaratory Judgment, and, Alternative Motion to Dismiss Under the Declaratory Judgments Act. (ECF No. 15.) Peggy Kasloff has joined this motion. (ECF No. 16.)

For the reasons explained below, the Court rejects the Kasloffs' argument that the Court lacks subject matter jurisdiction, but the Court agrees with the Kasloffs that declaratory judgment is, from a practical perspective, not appropriate at this time. Rather than dismissing this case, however, the Court will administratively close it pending certain developments in an ongoing lawsuit in Arizona.

## I. LEGAL STANDARD

A motion under Rule 12(b)(1) requests that the Court dismiss a claim for lack of subject matter jurisdiction. A plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). "A court lacking jurisdiction cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id*.

Rule 12(b)(1) motions generally take one of two forms: a facial attack or a factual attack. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Here, the Kasloffs present a purely facial attack, so the matter will be resolved with reference to Owners' Complaint and attached documents.

## II. BACKGROUND

The Complaint alleges as follows:

The Kasloffs are a married couple. (ECF No. 1 ¶ 2.) As of August 2015, the Kasloffs' auto insurer was Owners. (*Id.* ¶ 3.) In that month, the Kasloffs were moving from Greenwood Village, Colorado, to Atlanta, Georgia. (*Id.* ¶ 2, 45, 47.) While "in route to Atlanta," they took a vacation in Scottsdale, Arizona, where they were involved in a two-vehicle auto accident. (*Id.* ¶ 4, 45, 47.) Alan Kasloff was driving the Kasloffs' vehicle (in which Peggy was a passenger), and non-party Scott Acton ("Acton") was driving the other vehicle. (*Id.* ¶ 4.)

Alan and Peggy each retained a lawyer, and Alan Kasloff's lawyer soon informed Owners that Peggy had made a claim against Alan. (*Id.* ¶ 5, 7.) Owners responded by pointing to a portion of the relevant auto insurance policy ("Policy") commonly known as the "Household Exclusion," which excludes bodily injury or property damage caused by

2

a member of the insured's household. (*Id.* ¶ 7, 40.)

In November 2015, Owners received correspondence from Peggy Kasloff's lawyer, who notified Owners that Peggy intended to file an uninsured/underinsured ("UM/UIM") claim. (*Id.* ¶ 8.) It is not clear whether Peggy's counsel considered Alan to be uninsured or underinsured because of the household exclusion, or whether she considered Acton to be uninsured or underinsured, or both. The letter to Owners is clearly a generic template, and it refers only to "the other motorist." (ECF No. 1-7.) In any event, Owners again communicated—this time to both of the Kasloffs' respective attorneys—its position that it owed no coverage as to any of Peggy's injuries caused by Alan's negligence. (ECF No. 1 ¶ 9.)

In December 2015, a paralegal in Peggy Kasloff's attorney's office sent two e-mails to Owners' outside counsel, Mr. Gregory Giometti. The first e-mail asked whether Owners was denying medical payments coverage as well as liability coverage. (*Id.* ¶ 10.) The second e-mail "ask[ed] Owners to look at the issue of UIM coverage." (*Id.*) In January 2016, Mr. Giometti's associate, Mr. Evan Spencer, sent a letter to Peggy Kasloff's attorney denying any claim for UM/UIM coverage based on Alan's actions, but agreeing that medical payments coverage was available. (*Id.* ¶ 12.)

In July 2016, Peggy Kasloff filed a lawsuit in Arizona state court, naming Alan Kasloff and Acton as defendants ("Arizona Lawsuit"). (*Id.* ¶ 17.) Neither Peggy nor her attorney informed Owners of that lawsuit at that time. (*Id.* ¶¶ 14–17.)

In March 2017, Peggy Kasloff applied for entry of default against Acton in the Arizona Lawsuit. (*Id.* ¶ 18.) In May 2017, a paralegal for Peggy's attorney e-mailed Mr. Spencer, attaching various documents from the Arizona Lawsuit, including the

3

application for entry of default. (*Id.* ¶ 19.) As it turns out, Mr. Spencer had left Mr. Giometti's firm over a year earlier, but his e-mail account "was not properly shut down"—so the e-mail arrived but no one in Mr. Giometti's firm knew about that communication. (*Id.* ¶ 19 & n.1.)

Apparently Alan Kasloff, in his capacity as a cross-claimant against Acton in the Arizona Lawsuit, had also applied for default judgment against Acton, because the Arizona court issued a $500,000 default judgment in favor of Alan and against Acton on June 14, 2017. (*Id.* ¶ 20; ECF No. 1-12.) Five days later (June 19, 2017), Peggy Kasloff's attorney sent a letter to Mr. Giometti stating that "our previous correspondence has not been responded to" and attaching a copy of the default judgment in favor of Alan. (ECF No. 1-13.)[1] Peggy's attorney demanded $500,000 from Owners. (*Id.*) And, the day after that, Alan Kasloff sent a letter addressed to Mr. Spencer demanding $488,000 in UIM coverage based on the default judgment. (*Id.* ¶ 22.) For unexplained reasons, the date of this letter addressed to Mr. Spencer—June 20, 2017—is the date Owners claims it first became aware of the Arizona Lawsuit. (*Id.* ¶ 23.)

Based on all of this, Owners asserts five causes of action, all for declaratory judgment:

1. That the Household Exclusion means Owners has no duty to defend or indemnify Alan Kasloff with respect to Peggy Kasloff's claims against him in the Arizona Lawsuit. (*Id.* ¶¶ 41–48.)

2. That Owners did not receive proper notice of Alan Kasloff's cross-claim against Acton and is therefore not bound by the default judgment in the

---
[1] The Complaint does not say whether a default judgment issued in favor of Peggy.

Arizona Lawsuit. (*Id.* ¶¶ 49–55.)

3. That Owners need not pay UIM coverage to Alan Kasloff due to his own negligence. (*Id.* ¶¶ 56–61.)

4. That Owners did not receive proper notice from Peggy Kasloff of the Arizona Lawsuit and is therefore not bound by the default judgment there. (*Id.* ¶¶ 62–68.)

5. That Owners need not pay UM/UIM coverage to Peggy Kasloff in light of Alan Kasloff's alleged negligence. (*Id.* ¶¶ 69–77.)

### III. ANALYSIS

**A. Notice-Prejudice Generally**

A major thrust of Owners' Complaint is that the Kasloffs' allegedly late notice of the Arizona Lawsuit caused prejudice to Owners because it prevented Owners from arguing against any judgment that does not account for Alan Kasloff's supposed negligence. (*Id.* ¶¶ 54, 67.) Understanding this, the Kasloffs bring two arguments for dismissal of this lawsuit, and both require basic knowledge of Colorado's notice-prejudice rule in the insurance context.[2]

"[A]n insurer is prejudiced by a delayed notice [of an insurance claim] only when its ability to investigate or defend the insured's claim is compromised by the insured's failure to provide timely notice." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223,

---

[2] If this lawsuit were to remain in Colorado, the Court could not apply Colorado's notice-prejudice rule without first concluding that Colorado law applies to this dispute. The parties have not pointed the Court to any choice-of-law provision in the Policy. Owners instead argues, briefly, that "Colorado law should control this coverage issue." (ECF No. 20 at 9; *see also* ECF No. 1 ¶¶ 35–36.) The Kasloffs do not challenge this assertion. For that reason alone, the Court will assume for present purposes that Colorado's notice-prejudice rule will apply to this case, should it remain here. The Court emphasizes that this is only an assumption, not a holding or conclusion.

232 (Colo. 2001). When an insurer argues that it may deny coverage because it received late notice of a claim, the Colorado Supreme Court requires "a two-step approach." *Id.* at 231. At the outset, the Court must make

> a preliminary determination of whether an insured's notice was timely. Such a determination should include an evaluation of the timing of the notice, and the reasonableness of any delay. Once a court has determined that an insured's notice was untimely, and that the delay was unreasonable, it should then turn to the issue of whether the insured was prejudiced by such untimely notice.

*Id.* Ultimately, "an insurer may only deny benefits if it can prove by a preponderance of the evidence that it was prejudiced by the delay." *Id.* at 232.

**B.     Diversity Jurisdiction**

The Kasloffs' first argument is a challenge to the diversity jurisdiction requirement that no plaintiff be domiciled in the same state as any defendant. *See City of Indianapolis v. Chase Nat'l Bank of City of New York*, 314 U.S. 63, 69 (1941) (diversity jurisdiction requires a "controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side"). The Kasloffs claim that they are actually adverse to each other because, they say, the underlying question is whether Alan Kasloff drove negligently such that he is liable to Peggy Kasloff. So, the argument continues, this Court must re-align Peggy Kasloff as a plaintiff because Peggy is similarly trying to prove Alan's negligence. But Alan and Peggy are both domiciled in Georgia. (ECF No. 1 ¶ 2.) Accordingly, upon realignment, diversity jurisdiction will no longer exist. (ECF No. 15 at 7–8.)

Federal courts have the power and duty to realign parties according to their true interests, and cases may be dismissed if that realignment destroys diversity jurisdiction

(and there is no other basis for federal subject matter jurisdiction). *See generally City of Indianapolis*, *supra*; *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310 (11th Cir. 2012). Realignment, if needed, requires the Court to determine the "primary and controlling matter in dispute," and then to determine what position the various parties take on that matter in dispute. *City of Indianapolis*, 314 U.S. at 69–70.

Here, Owners' first, second, and fourth claims for relief all seek declaratory judgment regarding coverage under the Policy on theories that do not depend on Alan Kasloff's alleged negligence. Specifically, the first claim for relief asserts that the Policy does not require Owners to defend or indemnify Alan Kasloff from claims brought against him by Peggy Kasloff due to the Household Exclusion; and the second and fourth claims for relief assert that Owners has been prejudiced by the late notice it received of the Arizona Lawsuit. Owners' third claim, by contrast, asserts Alan Kasloff's negligence, but it is also explicitly a fallback position: "even disregarding the issue of late notice, UIM benefits would not be triggered for Mr. Kasloff under Colorado law [due to his own negligence]." (ECF No. 1 ¶ 60.) Owners' fifth claim for relief is similar to the third claim for relief because it is also a fallback position potentially based on Alan Kasloff's negligence, although it is directed specifically at Peggy Kasloff:

> Regardless of whether Ms. Kasloff breached the Policy by failing to notify Owners of her lawsuit against Mr. Acton, Owners owes no UM/UIM benefits to Ms. Kasloff under the Policy based upon either Mr. Kasloff's negligence or, alternatively, the alleged negligence of Mr. Acton, purportedly demonstrated through the entry of the aforementioned default judgment.

(*Id.* ¶ 70.) Finally, the Court notes that the nearly exclusive focus of the parties' briefing to-date has been regarding the second and fourth claims for relief, concerning notice

7

and prejudice. (*See* ECF Nos. 15, 20–22.)

The Court accordingly concludes that the primary matter to resolve is independent of whether Alan Kasloff drove negligently. Moreover, even if the Court were required to resolve the question of Alan Kasloff's negligence, Owners and Peggy Kasloff would still be fundamentally adverse because Owners would be seeking to prove Alan's negligence as a predicate to denying coverage. Consequently, realignment of Peggy Kasloff as a plaintiff is inappropriate, and the parties' complete diversity remains intact.[3]

## C.   Propriety of Declaratory Judgment in Light of the Ongoing Arizona Lawsuit

The Kasloffs next argue that the Court should exercise its discretion not to hear this declaratory judgment action. (ECF No. 15 at 8–11.)

A district court "is not obliged to entertain every justiciable declaratory claim brought before it." *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("*Mhoon*"). Rather, "[w]hether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court." *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). The Tenth Circuit has endorsed the following factors to guide that discretion:

> [1] whether a declaratory action would settle the controversy;
> [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether

---

[3] For the first time in his reply brief, Alan Kasloff argues that the Court lacks personal jurisdiction because the accident occurred in Arizona and he no longer resides in Colorado. (ECF No. 21 at 10.) A personal jurisdiction objection may be waived, and is deemed waived by operation of law if not raised in a party's motion to dismiss. *See* Fed. R. Civ. P. 12(h)(1). The Court therefore ignores this argument.

> use of a declaratory action would increase friction between
> our federal and state courts and improperly encroach upon
> state jurisdiction; and [5] whether there is an alternative
> remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (internal quotation marks omitted; bracketed numerals in original). Also, "[a] federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Kunkel*, 866 F.2d at 1276. Regardless, the entire inquiry is "fact-intensive and highly discretionary." *Mhoon*, 31 F.3d at 983.

The Court finds the first, second, and fifth considerations are the most important in these circumstances. This Court *could* adjudicate the question of whether Owners has suffered prejudice, but such litigation would more or less devolve into a supposed "factual" question of whether the Arizona default judgment is unassailable as compared to Owners' interests. It makes vastly more sense simply to send Owners to Arizona to try to intervene and protect its interests in the lawsuit pending there. Owners at times characterizes the Arizona Lawsuit as "almost completed" and "all but completed" (ECF No. 20 at 8, 11), but Owners gives no explanation or citation for that characterization. It does not attach so much as a docket sheet from the Arizona Lawsuit. Thus, it is unclear whether Owners has actually suffered any prejudice—and the only way to know for sure is for Owners to attempt to intervene and defend its interests.

Finally, as to Owners' argument that a Colorado court should decide questions of Policy interpretation, and of notice and prejudice, under Colorado law (ECF No. 20 at 11), it is not at all clear that Colorado law should apply to this dispute. The Court makes no ruling either way on that matter, but notes only that the propriety of Colorado law is not nearly as certain as Owners portrays it to be.

Accordingly, the Court agrees with the Kasloffs that declaratory judgment is inappropriate at this time. However, the Court will not formally dismiss this case or enter final judgment. Instead, the Court will administratively close the case (which does not have the same potential statute-of-limitations consequences as dismissal and judgment) subject to reopening if the Arizona court refuses Owners' intervention, or if it permits intervention but later rules in a way that demonstrates the sort of prejudice that prompted Owners to file this lawsuit. To be clear, the Court will not reopen the case as a vehicle to collaterally review any order of the Arizona state court—which would be a violation of the *Rooker-Feldman* doctrine. *See generally* 18B Charles Alan Wright *et al.*, Federal Practice & Procedure § 4469.1 (2d ed., Apr. 2017 update).

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Kasloffs' Motion to Dismiss (ECF No. 15) is GRANTED IN PART; and
2. The Clerk shall ADMINISTRATIVELY CLOSE this case, subject to reopening only for good cause of the sort described in this Order.

Dated this 6th day of March, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge